The next matter, No. 25-1469, Kendall Seafood Imports, Inc. v. Mark Foods, LLC At this time, would Counsel for the Appellant please introduce himself on the record to begin? Good morning, Your Honor. John Mancini on behalf of Kendall Seafood, Inc. With your approval, I would like to reserve two minutes of my argument. You may. Thank you, Your Honor. Your Honor, this is a matter which deals with the motion to dismiss a complaint filed by Kendall Seafood. Kendall Seafood filed a very simple, straightforward complaint with the sole count being tortious interference. The District Court dismissed the complaint, and we believe the dismissal of that complaint should be vacated essentially on two reasons. One is procedurally, and then secondly, with regards to the merits of the matter. Procedurally, the District Court erred in allowing the motion to dismiss to survive an amendment to the original complaint. The parties in this case, Kendall Seafood, amended its complaint, and the amendment to the complaint, although it didn't add a multitude of additional factual allegations, it did amend the complaint substantial enough to further tailor it necessary for the elements of tortious interference. The District Court applied the motion to dismiss that was filed targeting the original complaint to the second subsequent amended complaint, and we believe that that was an error because our law is very clear that once an amended complaint has been filed, the original pleading is essentially dead. It's no longer the operable document. So the document which was the subject of this lawsuit was the second amended complaint, and the second amended complaint adequately and appropriately pledged the elements necessary for tortious interference. This is a matter that arises in the state of Rhode Island, and so therefore under diversity jurisdiction filed with the District Court. What is the tort? It is a tort, and it's a tort. What is the tort? Oh, the tort is tortious interference and essentially. What did the defendant do other than try to buy stuff from someone he knew was already selling to your client? Your Honor, it goes beyond just simply trying to buy something that was for sale in the open market because the complaint alleges that there was a long-term standing relationship between Kendall Seafood and Mr. Grimaldi, who was known as a large supplier and seller of Chilean sea bass, who was selling Chilean sea bass based on behalf of the entity CSB. So no one else could try to outbid your client? Well, Your Honor, it's not a question of trying to outbid the client. As the complaint references, the relationship between CSB and Kendall was known, and it was known specifically to Mark Foods.  I'm sorry, Your Honor? Why couldn't he say, hey, you've got this long-term relationship with this guy, you like him and everything like that, but you're better off dealing with me? Because he understood, because Mark Foods knew and had known for quite some time, as alleged in the complaint, that that relationship was contractual, it was ongoing, it was part of a process which had taken place starting in 1996. But I thought there were, I read the complaint to suggest there was a new contract every year, and there were negotiations going on for this particular year, but there wasn't, I don't read the complaint to say that there was in place a contract, and the negotiations here were particularly important because there was some indebtedness that your client had to satisfy in terms of its relationship with the Chilean sea bass company. So to say that there was a, now, that doesn't mean you can't argue that there was tortious interference with an economic opportunity, which is a distinct claim, but I don't see any contract here. I don't see any contract alleged. Well, Your Honor, we allege that there's a relationship, and we allege that that relationship rises to the level of contract. But under Rhode Island law, the elements are the existence of a contract, the knowledge of the existence of that contract, the interference of that contract, and then finally damages. But interference, I may be wrong, so correct me if I'm wrong, but as I understand it, interference with the contract is not a tort. You can have an agreement, you can have an ironclad contract to sell your car to Joe, and I can come up to you and say, I'll pay you triple for that. If you sell it to me instead, breach your contract with Joe and sell it to me. As I understand it, that's not a tort. To make it a tort, I'd have to use some fraud or intimidation or other independently wrongful conduct. The example I gave, you'd sell it to me, and Joe would have a breach of contract claim against you, but you'd have no claim against me. You're correct, Your Honor. The element that makes tortious interference a tort is the intentional infliction, or I shouldn't say the intentional infliction. Certainly it was an intentional infliction of harm unto my client, but it was an intentional interference, and we allege that Mark ---- So you're saying that if you intentionally offer someone who has a contract to deal with you in breach of that contract, that is tortious interference as opposed to just interference? Your Honor, what I'm saying is that the complaint alleges that what Mark Foods did here was it acknowledged the perspective ---- It acknowledged it knew of the relationship that was ongoing.  It knew of the prospective relationship that was continuing.  It understood that there was a potential glimpse of hope to now acquire this Chilean sea bass that for the last ---- from 2012 to 2020 it wasn't able to acquire because of the ---- Counsel, I think you're missing the point of Judge Chiara's question. It's not enough to show that the interference was intentional. That interference has to be ---- I think the case law refers to legal malice or some ---- It has to take an improper form, such as, as Judge Chiara was suggesting, some kind of intimidation, perhaps wrongly defaming the other party, saying they're no good, they're not reliable, but there's got to be some kind of impropriety, and I don't see anything in your complaint that alleges that required element. We do allege, and that was the memorandum, the decision, I guess focuses on a few elements, but we do allege in our complaint that Mark Foods improperly interfered by contacting Cremaldi and trying to steer the Chilean sea bass purchase, not only in 2021, but in the previous years, away from Kendall Seafood and to specifically Mark Foods. That is an interference with that relationship. That sounds like sort of aggressively advocating for your economic goals rather than this sort of plus factor I think you need under Rhode Island law for the tortious part of this. It's an aggressive attempt to steer the business from one to the other, and the component is the question of was that intentionally done and was it maliciously done, and our complaint, their inference can clearly be made from that. What law do you have that supports that that's tortious? I'm sorry, Your Honor? What cases do you have that support that that would add up to tortious interference? Well, the cases that we cited in our memo that reference Rhode Island law simply say that the implication of the tortious interference of claiming that that act was purposefully done to steer the business away or to break the contract not only rises to a breach of contract on the party that has the contractual relationship, but also tortious interference on the party, the wrongdoer who seeks to break that relationship, seeks to break the future expectation of that relationship. Thank you, Your Honor. Thank you. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record to begin? Good morning. Josh Krumholz for the appellee, Mark Foods. So we do have the procedural and the substantive. You were focused on the substantive, so I'll deal with that first. There is no question in the law, and we recite all the cases that establish that under Rhode Island law, there does need to be something improper or factors to be considered in assessing that, but there needs to be some allegation that gives them rise to be able to move forward. Here, as Your Honors have stated, the best inference that one could draw is that for approximately 10 years prior to the year in question, 2021, they were in competition with each other. My client made offers to purchase the fish. They gave a price. That's it. That's competition. If that is going to be enough, then I'm guilty every time I try and get a client because I'm trying to take that client from somebody else. My competition is guilty every time they try and take my clients. It's as simple as that. There really is nothing else to the issue from what I can glean. So factually, there is no allegation that supports a claim of some improper interference. Procedurally, what the appellant would have this court rule is that whenever there is an intervening amended complaint, one must treat the original complaint or the original motion to dismiss as moot, regardless of what common sense tells us. This court has not fully addressed that issue. To the extent that you affirm the Patain case, you affirmed it largely on that ruling, and that ruling clearly said that that not need be done. Every First Circuit District Court case and every Circuit Court case that has addressed this issue unsurprisingly comes down the same way, which is you've got to apply common sense. If the amended complaint is such that it materially changes the allegations and therefore has a meaningful substantive impact on the motion to dismiss, then it makes sense to ask the defendant to refile the motion to dismiss. If that is not the case, then it's most efficient to simply move forward on the original motion to dismiss that was filed. That's just basic common sense. Otherwise, we're just wasting our time. Here, the substantive additions did nothing to address the infirmities in the complaint. The additions added to the mechanics for entering into a contract between the plaintiff and CSB and, if anything, further established that there was no contract. For no other reason than they say that price unsurprisingly is an element, and there's been no price alleged to have been agreed to. The rest of the allegations that were added were merely conclusory allegations either of law or just stating generally that there is some kind of improper interference. Judge Smith properly excluded those because one must look just at the factual allegations to determine whether there's a plausible claim. To the extent that the plaintiff has claimed some kind of unfairness because they didn't get a chance to respond, factually, on the record, that's not true. Their opposition addressed their amended complaint. Our reply addressed the amended complaint. The district court decision focused solely on the amended complaint. If they want to file us a reply, they should have asked. They didn't ask. Counsel, I probably should have asked your opponent this, but maybe he can respond to it in rebuttal. He makes kind of an interesting point that given the nature of this tort, it involves dealings between the third party and the defendant that they may not really be fully aware of. Stuff goes on behind the scenes in secret that then affects the outcome that is damaging to them, and because of that, the court should provide a little more latitude in how much specificity they demand in the pleading so that discovery can go forward to try to find out what was really going on behind the scenes. I mean, it seems to be arguing for a kind of special pleading standard for a tortious interference claim. I think I can anticipate how you're going to respond to that, but I would be interested in hearing what you have to say, and then maybe opposing counsel can respond. Yes, thank you. I think you can anticipate it. Speculation will lead to a floodgate of speculative lawsuits. Can I imagine scenarios where there's enough circumstantial evidence that one can infer that something untoward has happened without having the express conversations?  I can imagine scenarios where there could be enough to allow for some discovery to confirm that or not. This court does not need to decide where that standard is or where it lies because here there's absolutely nothing. So what the plaintiff is advocating is if I bring a tortious interference case and I have no evidence that there was anything improper, I should be allowed to find out anyway. Again, I get to sue my competitors because I have no greater evidence against my competitors than they have against my client. So the last thing that I was just going to add, and I won't use up all my time here, is on the fairness argument. When they talk about not having the opportunity to argue, they haven't told us what they would argue. We would be filing the same thing all over again on the same grounds and having the exact same arguments six months from now that we're having today. So with that, unless there are any other questions, I will not use up all my time. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce himself on the record? He has a two-minute rebuttal. Again, Your Honors, John Mancini on behalf of Kendall Seafood Incorporated. Your Honor, I want to focus my remaining time or address the issues within my time that deals with the element of intentional interference. Rhode Island law makes clear there are four elements, the existence of the contract, the knowledge of that contract, and then the intentional interference. It does not say that the claimant or the party moving for tortious interference has to make an allegation of a malicious conduct or essentially finding of a malicious conduct, because it goes to your question, Judge Libetz, how do you know that at the pleading stage, at the initial gate, that there is this information about what was said, the defamatory information, if it's defamation, or if it's just simply, hey, we can offer you more money for your goods. But that act in and of itself, when there is a contract and there is an ongoing relationship between two parties, is also in and of itself an opportunity to steer that work. That is what tortious interference claims to protect. It seeks to protect the relationship between two contracting parties, whether those parties are in contract or about to be in contract. Because under Rhode Island law, you don't have to plead or have a finding that there is a binding contract. You just have to know that there's the existence of a contract, the knowledge of the existence of that contract, and then the conduct to try to strip that contract away from one to another. And that's the allegations that we make here. The district court, we argue, erred in stripping away from its analysis essentially three paragraphs of the complaint. And one of the paragraphs of the complaint that the district court eliminated was paragraph 24, wherein the defendant makes the allegation that Mark Foods intentionally and inappropriately interfered with the contract. That, in our mind, is sufficient to allege tortious interference. Thank you, Your Honor. Thank you. Thank you, counsel. That concludes argument in this case.